IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

_____ )
UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff,                   )
                                     )
                                     ) Docket Number
            vs.                      ) 8:21-cr-362
                                     )
BRIAN PATRICK WERTH,                 )
                                     )
        Defendant.                   )
_____ )

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE THEODORE D. CHUANG
UNITED STATES DISTRICT COURT JUDGE
WEDNESDAY, DECEMBER 18, 2024, AT 5:32 P.M.


APPEARANCES:

On Behalf of the Plaintiff:

        LASHANTA HARRIS, ESQ.
        U.S. Attorneys' Office
        6406 Ivy Lane, Suite 800
        Greenbelt, MD 20770


    KATHY CORTOPASSI, RDR, CRR, CRC, Official Court Reporter
                United States District Court
                    Greenbelt, Maryland


***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

APPEARANCES (Continued):


On Behalf of the Defendant:

        CARA KURTZ HALVERSON, ESQ.
        CULLEN MACBETH, ESQ.
        Office of the Federal Public Defender
        6411 Ivy Lane, Suite 710
        Greenbelt, MD 20770
and
        ANDREW R. SZEKELY, ESQ.
        Office of the Federal Public Defender
        100 S Charles St Tower II Suite 900
        Baltimore, MD 21201


ALSO PRESENT:

HSI Special Agent Michael Biddle

Paige Cameron, U.S. Probation

1          THE COURT:  Thank you.  Thank you, everyone.
2  Please be seated.
3          THE CLERK:  The matter now pending before this
4  court is Criminal Action Number TDC-21-0362, the United
5  States of America versus Brian Patrick Werth.  We are here
6  today for the purpose of a sentencing hearing.
7          Counsel, please identify yourselves for the record.
8          MS. HARRIS:  Good afternoon, Your Honor.  LaShanta
9  Harris here on behalf of the United States Government.
10  Sitting here at counsel table is Special Agent Michael Biddle
11  of the Department of Homeland Security Investigations.
12          THE COURT:  Good afternoon.
13          MS. HALVERSON:  And Cara Halverson on behalf of
14  Mr. Werth, who is to my right here, as well as co-counsel
15  Andrew Szekely and co-counsel Cullen Macbeth.
16          THE COURT:  Good afternoon.  Good afternoon,
17  Mr. Werth.
18          And for Probation?
19          PROBATION OFFICER:  Good afternoon, Your Honor.
20  Paige Cameron for Probation.
21          THE COURT:  Good afternoon.  You may be seated.
22          It's unfortunate we're starting this late in the
23  day.  I think there was some sort of mishap with the notices;
24  is that right, Ms. Harris?
25          MS. HARRIS:  It was, Your Honor. I apologize.  I

1    thought that -- I was confused about where the defendant was

2    in primary custody.  I thought he was still in custody from

3    our last scheduled sentencing.  My deepest apologies to Your

4    Honor and to all of the members of the Court, Madame Court

5    Reporter, Madam Clerk, defense counsel, witnesses, and Madam

6    Agent for the inconvenience that it has caused.

7              THE COURT:  Okay.  So we're here for the sentencing

8    in United States versus Werth.  On March 13, 2024, Mr. Werth

9    was convicted after a jury trial on Counts One and Two for

10   production of child pornography in violation of Title 18

11   United States Code Section 2251A; Count Three, coercion and

12   enticement of a minor, in violation of 18 U.S.C. Section

13   2222B; and Count Four, commission of a felony offense

14   involving a minor by a registered sex offender in violation

15   of 18 U.S.C. Section 2260A.

16             I've received and reviewed the following documents

17   in connection with today's proceedings:  First, the

18   presentence report, ECF Number 117; the Government's

19   sentencing memorandum, which is ECF 121; the defense

20   sentencing memorandum, with attachments, which is ECF 120;

21   the defendants filed a response to the memorandum, which is

22   ECF 125; I also have the motion for an order of forfeiture.

23             Is there anything else I should have received at

24   this point?

25             MS. HARRIS:  No, Your Honor.

1    MS. HALVERSON:  No, Your Honor.

2    THE COURT:  So, Ms. Halverson, have you and your

3  client had the opportunity to read and review the presentence

4  report and do you have any remaining objections to it?

5    MS. HALVERSON:  We have had a chance to review it,

6  Your Honor, and there's just a few remaining objections that

7  I'd like to address.

8    THE COURT:  Okay.  So, there's one issue, which

9  tell me if this is still a live issue, which I think it is,

10  is the mandatory minimum sentence.

11    MS. HALVERSON:  That is correct, Your Honor.

12    THE COURT:  Beyond that, what else is there?

13    MS. HALVERSON:  There's also an issue the defense

14  would like to be heard on in regards to the waiving of any

15  special assessments beyond the non-waivable $100 special

16  assessment.

17    THE COURT:  Okay.

18    MS. HALVERSON:  Additionally, we'd like to be

19  heard, we continue to object on the inclusion of mandatory

20  condition 3, which we don't believe there's a basis for him

21  to have drug or alcohol testing or treatment.  There's

22  nothing in the PSR to suggest that he has an issue with that,

23  so we would request that that issue be removed.

24    THE COURT:  I'm sorry.  Mandatory condition, you

25  mean -- not the special condition.  Under 3 -- that's one

1    that at least in some circumstances can be waived, is that

2    the one you're referring to?

3             MS. HALVERSON:  Correct.

4             THE COURT:  Okay.

5             MS. HALVERSON:  And we would ask that that happen.

6             And then, additionally, we continue to object to

7    the language that's used in additional recommended condition

8    of supervision 12, which is the polygraph condition.

9             Given case law in this District and the recent

10   decision by Judge Boardman, we don't think that a blanket

11   polygraph condition is appropriate in this case.

12            THE COURT:  I'm not familiar with Judge Boardman's

13   decision.  What was that?

14            MS. HALVERSON:  Sure.  So, it's United States v

15   Gaskin.  That's DLB 14-CR-37.  That decision just came out I

16   think it was earlier this week or maybe at the end of last

17   week.  That condition -- in that particular case and I was

18   counsel for that case, so I have a pretty good handle on what

19   happened -- but in that particular case, Probation had

20   requested a modification of supervised release conditions for

21   an individual that had completed sex offender treatment, had

22   no violations pending or alleged; and it's just sort of a

23   blanket "every sex offender in the district should have a

24   polygraph condition regardless of whether or not they're in

25   treatment or not."

1          Judge Boardman -- we challenged that.  We opposed
2   that modification.  The Government deferred to the Court.
3   And Judge Boardman issued a written opinion, a 24-page
4   opinion finding that Probation's request for a modification
5   to supervised release conditions when treatment had been
6   successfully completed and there were no allegations of
7   violations, that that was untethered from 18 U.S.C. 3553(a)
8   and therefore impermissible.

9          And our position today would be that while
10  Mr. Werth is -- has been convicted of serious crimes and he's
11  looking at a serious sentence and potentially a long period
12  of supervised release, that at this juncture, it's not --
13  that there's not been a showing that the polygraph condition
14  is needed.

15          THE COURT:  So --

16          MS. HALVERSON:  Specifically, Your Honor, I
17  think --

18          THE COURT:  Before we get there, let me just start
19  with -- I'm looking at the presentence report where your
20  objections are noted.  It says you object to mandatory
21  condition number 3, which is the one you reference about drug
22  testing.

23          Additional conditions 7, which you're not
24  referencing now.  This is the work one.  So, I assume there's
25  no longer an issue with that.  I'm sorry.  7 is mental health

8

```
 1   treatment.
 2          MS. HALVERSON:  I think that the --
 3          THE COURT:  Do you object to that or not?
 4          MS. HALVERSON:  I think that the numbering changed
 5   between the draft report and the final report.
 6          THE COURT:  I think that's probably the problem
 7   here, so I can't --
 8          MS. HALVERSON:  But the -- our objection remains,
 9   which is in the final document, which is ECF 117.  It's
10   listed as number 12 of the special conditions.
11          THE COURT:  So, that's all fine.  But, again, how
12   do I have notice of it if I'm looking at the final report and
13   it says the objection is to 16.
14          So, Ms. Cameron, can you clarify what were the
15   objections?
16          PROBATION OFFICER:  Your Honor, just give me a
17   moment to find it.  I believe that counsel is correct that
18   there were two conditions that were removed that then changed
19   the numbering, so it would have gone down two.  I'm looking
20   for the exact wording in the objection document that I have.
21   But I believe that what she's saying is correct.
22          And we had addressed their objection as if it was
23   to the polygraph even though it was a different number at the
24   time.
25          THE COURT:  Well, it says 7 and 16 were removed.
```

1          Okay.  I can't make heads or tails of it.

2    Obviously, we'll discuss them.  But in the future, let's try

3    to get the report -- I don't look at the original report if I

4    have the final report.  And the final report lists all the

5    objections and what was done with them.

6          I don't see anything here saying that the defense

7    has objected to what is now paragraph 12.  Perhaps that used

8    to be 7 or 16?  Unclear?  But can we try to make sure -- now,

9    again, I don't know if this is a verbatim submission from the

10   defense as to what the objections are, or whether this is

11   sort of the interpretation by appropriation.  But can all the

12   parties and Probation work together to make sure that

13   whatever is listed as the objections matches what's in the

14   report?

15            PROBATION OFFICER:  Yes, Your Honor.

16            THE COURT:  Okay.  Do you know if that's a standard

17   thing for your office?  Because obviously this is this one

18   case, but this could happen in another case.

19            PROBATION OFFICER:  Yes.  I believe we try to be as

20   brief as possible.  And when those numbers change, we should

21   be noting it.  But I will make sure that that's done in this

22   case when it's amended, and in the future.

23            THE COURT:  Okay.  So, I'm not sure where we should

24   start, then.

25            So we've -- why don't we go back to the beginning

1  because, frankly, conditions of supervised release, that is

2  technically part of the report but it's not in the

3  guidelines.  That's usually where I start.  We can talk about

4  that as part of the argument on what the sentence should be,

5  not just any term of imprisonment but also what the specific

6  condition should be.

7  So take me back again.  So, we have the mandatory

8  minimum sentence issue, which is a legal question, and what

9  were the other -- and then there was the conditions and there

10 was something in between.

11 MS. HALVERSON:  Your Honor, the rest were

12 conditions.  We had no other PSR objections.

13 Oh, I'm sorry.  I'm sorry.  I misspoke.  The

14 special assessment condition.

15 THE COURT:  Right, okay, well.

16 Also something I think we can discuss in

17 argument -- I certainly will ask the parties for their views

18 on that.  So, let's start with this issue of whether the

19 25-year mandatory minimum sentence applies.  And it was

20 briefed extensively.  Is there anything else either side

21 wants to add to that issue?

22 MS. HARRIS:  Not on behalf of the Government, Your

23 Honor.

24 MR. MACBETH:  Your Honor, unless you have

25 questions, I'm happy to rest on the briefing.

1          THE COURT:  Okay.  Well, then I don't.

2          So I understand the issue is the defense objection

3    to the mandatory 25-year minimum sentences on Counts One and

4    Two under 18 U.S.C. 2251E on the grounds that Mr. Werth's

5    prior Maryland state conviction for sexual offense in the

6    fourth degree, which is Maryland Code Annotated Criminal Law

7    Section 3-308(b)(1), is not a predicate offense for the

8    higher mandatory minimum sentence and that is not one for a

9    crime, quote, "relating to aggravated sexual abuse, sexual

10   abuse, abuse of sexual contact involving a minor or ward" or

11   other qualifying categories.

12         Although the parties disagree on this question,

13   most of the underlying facts are either agreed to or clearly

14   established in the law.

15         First, the parties agree, and the Court finds, that

16   the modified categorical approach may be used here and that

17   within the statute of conviction, the defendant was convicted

18   for -- of the divisible offense of sexual contact with

19   another without the consent of the other under Section

20   3-308(b)(1) and that the term "sexual contact" is defined as,

21   quote, "an intentional touching of the victim's or actor's

22   genital, anal, or other intimate area or for sexual arousal

23   or gratification or for the abuse of either party, which is

24   defined in Section 3-301(e)(1).

25         It's also clear, based on United States versus

1  Diaz-Ibarra, 522 F.3d 343 (4th Circ. 2008) that the term
2  "sexual abuse" means the use or misuse of a person for
3  purposes of sexual gratification, and that under Larios-Reyes
4  versus Lynch, 843 F.3d 146, (4th Circ. 2016), which examined
5  the same language underlying the Maryland crime of sexual
6  offense in the third degree, that based on this definition of
7  sexual abuse, there is not a categorical match between the
8  Maryland offensive conviction and sexual abuse because the
9  Maryland offense can be committed for the purposes of abusing
10 the victim, not necessarily for sexual gratification.

11         The issue is whether the prior conviction is for a
12 crime that is, one, quote "relating to," unquote, sexual
13 abuse.

14         Under United States versus Colson, 683 F.3d 507,
15 (4th Circ. 2012), that term is a broad one and it means,
16 quote, "to stand in some relation to, to have bearing or
17 concern, to pertain to, to refer to, to bring into
18 association with or connection with."

19         Here, the Court finds the opinion in United States
20 versus graves, 653 F.Supp. 3d, 242 (D. Md. 2023), to be
21 largely on point and persuasive.  In Graves, the Court
22 effectively considered the same issue and concluded that the
23 Maryland crime relates to sexual abuse because even though
24 the crime can be committed without the purpose of sexual
25 arousal or gratification, the form that involves touching in

1  order to abuse the victim necessarily involves touching of a
2  sexual nature that is sufficiently related to the generic
3  form of sexual abuse.

4         The Court largely adopts -- this Court largely
5  adopts the much more detailed analysis in Graves and finds
6  that on that basis, Mr. Werth's conviction for sexual offense
7  in the fourth degree is for a crime relating to sexual abuse
8  and finds that the 25-year mandatory minimum sentence applies
9  to Counts One and Two.

10        In so ruling, the Court does not consider the facts
11  of the conviction as suggested by the Government.  Under the
12  modified categorical approach, consideration of the facts is
13  not appropriate.  And the Court is focused only on the
14  elements of the offense just as the Court did in Graves.

15        As the Court -- again, I draw a particular
16  distinction between some of these categorical or modified
17  categorical approach questions in which there needs to be a
18  categorical match and the situation under this statute and
19  under Colson that focuses on whether it is an offense that is
20  relating to sexual abuse.  That distinction obviously has to
21  be -- or necessarily there is a distinction otherwise there
22  wouldn't be this difference in language.  And this scenario,
23  as noted in Graves, is one in which, while there's not a
24  categorical match, it meets the definition of or meets the
25  term "relating to."  And so I will apply that mandatory

1    sentence.

2              Any questions about that determination?

3              MS. HARRIS:  Not on behalf of the Government.

4              MS. HALVERSON:  Not on behalf of defense.

5              THE COURT:  Okay.  So, looking at the guidelines

6    themselves, which is unaffected -- well, it's affected in one

7    sense, but not in terms of the numbers.

8              The total offense level -- are there any -- well,

9    you said what your objections were.  So, I take it there are

10   no objections to the guidelines calculations that we have in

11   the presentence report.

12             I agree with the report that the total offense

13   level is 43.  The criminal history category is 2.  So, the

14   guideline range is life imprisonment.  The maximum penalty is

15   50 years on Counts One and Two, technically make the range

16   for those counts 50 years each where Count Three carries a

17   maximum penalty of life, though that is the overall guideline

18   range.  The guideline range for supervised release is five

19   years to life, and there is a mandatory minimum term of

20   supervised release of five years.  There is the mandatory

21   consecutive sentence in Count Four, which is not part of that

22   calculation.

23             I also find that the guideline range for a fine is

24   $50,000 to $500,000, given that there are multiple counts.

25             Any questions or issues about the guidelines?

1          MS. HARRIS:  Not on behalf of the Government.

2          MS. HALVERSON:  Not on behalf of defense.

3          THE COURT:  Okay.  So, I can hear argument on what

4   the sentence should be.  And in doing so, I would ask you to

5   address certainly term of imprisonment, supervised release,

6   also address this issue of the mandatory special assessments

7   and whether they should be waived based on indigency or

8   otherwise, and then we can also talk about the conditions of

9   supervised release.  And it seems as if the ones at issue,

10  just to recap, are the condition on -- mandatory condition

11  number 3, I believe it is, regarding drug testing, special

12  condition number 12 regarding polygraphing, and -- was there

13  one more, Ms. Halverson, or just those two?

14         MS. HALVERSON:  It was just those two in addition

15  to the fine.

16         THE COURT:  Okay.  So, I'll ask everyone to address

17  those, as well.

18         So why don't we start with the Government, go to

19  the defense.  And then if you would like to, we'll hear from

20  Mr. Werth.

21         Ms. Harris.

22         MS. HARRIS:  Thank you, Your Honor.

23         The Government is going to rely primarily on the

24  sentencing memo that was submitted at ECF 121 and we'll be

25  submitting just a brief presentation to Your Honor today to

1   supplement that filing.

2            I wanted to start by discussing the nature and the
3   circumstances of this offense.  And I wanted to highlight for
4   the Court a quote from the Supreme Court case United States
5   versus Williams, which is 553 U.S. 285, which states that, in
6   part, crimes involving child pornography are particularly
7   atrocious because they harm and abase the most defenseless of
8   our citizens.

9            As Your Honor knows, because Your Honor did sit
10  through the trial, from January 2021 through June of 2021
11  this defendant communicated with multiple minor females,
12  Victims A, B, and C, over the Internet and enticed, coerced,
13  and persuaded them to engage in sexually explicit conduct for
14  his gratification for the purpose of producing those visual
15  depictions and transmitting them throughout the Internet.

16           These particular offenses were because the age of
17  the females that were involved, even though they were in
18  their teenage years, they were still very vulnerable victims,
19  one of which Your Honor actually heard from during the trial.

20           And the nature and circumstances of that particular
21  offense and the nature of the interaction that this defendant
22  had with those women -- these children, these young women --
23  in making them trust him and feel like he was a friend I
24  think are particularly egregious and that a sentence of 840
25  months is appropriate for that particular factor.

1        The Government spent significant time in its memo
2   discussing the history and characteristics of Mr. Werth.  I
3   will not go into as much detail here because I know Your
4   Honor has read the sentencing memo.  But I wanted to
5   highlight for this particular factor that the conduct and the
6   number of victims that the defendant communicated with does
7   indicate that his behavior is compulsive and that for the
8   prior offense he was not deterred either by a sentence or by
9   being under -- on probation or supervised by the Maryland
10  Department of Public Safety and Correctional Services.
11       He was caught abusing a teenager who was under his
12  care through, as part of a church event activity.  And even
13  serving a prison sentence and being supervised were not
14  significant enough and, therefore, a significant and lengthy
15  federal sentence will be appropriate to help deter the
16  defendant where previous efforts have failed.
17       With regard to -- and for those reasons, his
18  history and circumstances support the sentence of 70 years in
19  prison.
20       With regard to the factor to affect the seriousness
21  of the offense and promote respect for the law, the
22  Government does believe that this defendant will be a
23  continuing danger to the public and to young girls if he is
24  not imprisoned for a lengthy period of time.
25       A sentence above the mandatory minimum of 35 years

1  will protect the public for deterrence to those who would

2  prey upon vulnerable victims like this defendant did.  It

3  will send a message to any would-be sex offenders they will

4  be severely punished if they do engage in this type of

5  conduct.

6         Additionally, this lifetime period of supervised

7  release would aid in specific deterrence for this particular

8  defendant.

9         Upon any release from imprisonment, obviously, the

10  defendant needs to be closely monitored to ensure that he

11  never exploits another girl for the rest of his life.

12         Therefore, a sentence of 70 years will reflect the

13  seriousness of the offense, promote respect for the law and

14  provide just punishment to the event -- for the offense and

15  provide adequate deterrence for this particular defendant for

16  his criminal conduct.

17         So in evaluating and applying all the factors and

18  crafting the sentence, the Government believes that 25 years

19  of imprisonment for Count One, which was a production of

20  child pornography, and then 25 years for Count Two, which is

21  also production of pornography -- child pornography, excuse

22  me, and then 10 years for Count Three, which is coercion and

23  enticement of a minor, and then 10-year mandatory consecutive

24  for Count Four brings us to a total of 70 years of

25  imprisonment, which obviously, as Your Honor just stated, is

1    below the guidelines established by his criminal offense and
2    his criminal history under the sentencing guidelines, but we
3    do think that it is an appropriate sentence in this case.

4              THE COURT:  I'm sorry.  What were you recommending
5    on Count Three?  Just to make sure I have this right.

6              MS. HARRIS:  Count Three is 10 years.  So, 25 on
7    Count One --

8              THE COURT:  But consecutive?  Right?  You're asking
9    for all these to be consecutive, effectively; right?

10             MS. HARRIS:  Yes, I am.  I apologize.  I should
11   have picked up on that.

12             And that's Government's presentation with regard to
13   the period of imprisonment.

14             With regard to the about special assessment, the
15   Government is very well aware of the defendant's work
16   history.  We had contact with one of his supervisors in the
17   course of the trial.  We know that he wasn't getting -- he
18   was not paid a significant amount.  But we do think that
19   financial fines do have a particular strong effect on people
20   like the defendant who have multiple degrees and are well
21   educated and have the capacity to have very sustainable
22   employment upon his release from imprisonment.

23             So, the Government does believe that there should
24   be a fine.  We have no recommendation about the amount of
25   fine, but we do think that there should be a fine associated

1  with this period, of this sentence.  And we will defer to the

2  Court on the amount of that.

3        THE COURT:  So you're asking for a fine, which is

4  separate from the special assessments.  So, what about the

5  special assessments?

6        MS. HARRIS:  The Government would defer to the

7  Court on whether there should be a special assessment above

8  the $100.

9        THE COURT:  Okay.  And then these conditions of

10 supervised release, the drug testing condition and this

11 polygraph condition, any views on those?

12       MS. HARRIS:  The Government believes that the

13 United States Office of Probation is in the best position to

14 determine whether there should be any drug or alcohol

15 assessments or treatments.

16       I do understand that there has been no indication

17 in the presentence report investigation report regarding any

18 prior use of drug or alcohol.  But I think that when the

19 Office of Probation determines --

20       THE COURT:  I think there is marijuana use

21 reported; correct?  And mushrooms?  I'm looking at Paragraph

22 85.

23       MS. HARRIS:  Oh, that's right.  I do remember that,

24 Your Honor.

25       We believe that the Office of Probation does a very

1  good job of making assessment about whether people need

2  testing and treatment, and I believe that the Office of

3  Probation should be encouraged and allowed, as one of the

4  conditions, to make that assessment and then make a

5  determination independently specifically for this defendant

6  whether he needs any additional testing or treatment.

7          THE COURT:  Okay.

8          MS. HARRIS:  What was the last one?

9          THE COURT:  The polygraph.

10         MS. HARRIS:  Oh, the polygraph.  I am not familiar

11  with Judge Boardman's recent opinion, but our position for

12  the Government is that polygraphs are a useful tool to be

13  used periodically in order to determine the likelihood of

14  recidivism and that Probation should be able to utilize this

15  tool because of the nature of the offenses in this case.

16         Even without having done a special assessment of

17  the defendant, the Government believes that the nature of the

18  offenses in and of itself speak to and encourage and justify

19  the probation office's ability to be able to conduct the

20  polygraph test, so we would ask to maintain that condition.

21         THE COURT:  A couple quick questions.  Just to

22  clarify for the record.  Were all the three victims notified

23  of sentencing and the opportunity both to make written or

24  in-person statements?  And also to seek restitution?

25         MS. HARRIS:  Two out of the three were, Your Honor.

1    For one of the victims, we were not able to get in touch with

2    her or her family members.

3            THE COURT:  Which is this, the third one?

4            MS. HARRIS:  It is.  It is.  The youngest one.  But

5    for the other two victims, the first victim,         , the

6    person who testified -- she is technically not the first

7    victim, I think she's the second victim.  But she's the young

8    lady who testified during the actual trial.  She did come to

9    be present at the last sentencing hearing but was unable to

10   come and return for this sentencing hearing.  But she did

11   come and was prepared to testify, which is why I indicated

12   that in my filing she was not able to return.  And for the

13   other individual, we were in contact with her mother, and she

14   declined the opportunity to come speak or to draft a victim

15   impact statement on behalf of her daughter.

16           THE COURT:  Okay.  Well, I apologize for the needed

17   continuance last time.  That's unfortunate that the victim

18   was not able to be present.

19           Okay.  So, the -- but to confirm, everyone had the

20   opportunity to submit a request for restitution and no one

21   has?

22           MS. HARRIS:  That is correct, Your Honor.

23           THE COURT:  Okay.  Anything else from the

24   Government?

25           MS. HARRIS:  No, nothing else.  Thank you for the

1  opportunity.

2          THE COURT:  Let me just turn briefly to Ms. Cameron

3  on these condition issues.

4          Just to clarify the reason for the drug testing, I

5  see Paragraphs 85 through 88 address substance abuse.  But in

6  terms of it looks like the defense is asking to waive that

7  otherwise standard condition.  What's your views on that

8  question?

9          PROBATION OFFICER:  Your Honor, in another type of

10  case, we probably wouldn't be recommending that substance

11  abuse testing and treatment.  Every sex offender case we do

12  staff with one of our special offender specialists that

13  supervises sex offenders, and we get all of their conditions

14  after they review our PSR.  So, I think the combination of

15  that minimal past reported substance abuse on top of what the

16  instant offense is had her recommending that he initially be

17  placed on substance abuse testing or that we not recommend

18  waiving that mandatory condition.

19          We also usually defer to the Court in any case to

20  waive the drug testing, and I do not believe -- well, yeah,

21  for the mandatory condition for condition 3, we defer to the

22  Court.  We don't recommend that be waived in a case like

23  this.

24          THE COURT:  Okay.  And then the polygraph

25  condition, which is special condition -- in the current

1   report, special condition 12, I believe.

2            PROBATION OFFICER:  Yes.  I actually also staffed

3   this issue with the special offender specialist, and she was

4   aware of the case that was going before Judge Boardman.

5   Unfortunately, I didn't know that that had been resolved and

6   I hadn't had a chance to speak with her after.

7            I do believe that we still recommend the polygraph

8   initially.  I am unsure if the probation office will be

9   changing their wording to only have that specific

10  circumstance.  But for someone who's initially placed on

11  supervised release and is subject to the usual conditions, I

12  do believe that it would still be appropriate in this

13  circumstance.  I don't have any updates on if our office is

14  going to change the wording of that condition based on

15  Judge Boardman's decision at this moment.

16           THE COURT:  Okay.  Okay -- okay, thank you.

17           Before we go to you, Ms. Halverson, let me just

18  quickly look at some of these key portions of the opinion

19  here.

20           (Pause.)

21           So, Ms. Cameron, you said that you are staffing

22  this proceeding with Ms. Gaskin?

23           PROBATION OFFICER:  Yes, it was prior to Judge

24  Boardman's decision.  But I remember I have a note that she

25  was aware of that case and that there was a pending decision.

1        THE COURT:  Did you go to the hearing, or was

2   there --

3        PROBATION OFFICER:  I did not.  I attempted to

4   contact the officer, but I don't know if she's working.

5        THE COURT:  It seems, though, as I'm looking at

6   this, though, that this was not a condition imposed at

7   sentencing; it was proposed to be added during supervised

8   release after some period of time?  Is that right?

9        PROBATION OFFICER:  That is what I gather from what

10  defense counsel said, which does seem like a different

11  situation, --

12        THE COURT:  Okay.

13        PROBATION OFFICER:  -- in part.

14        THE COURT:  Okay.  So there's a technical issue, so

15  we should pause, but it gives me a chance to look further

16  into this.

17        (Pause.)

18        Okay, thank you.

19        (20-minute recess.)

20        THE CLERK:  We're back on.

21        THE COURT:  Okay, thank you.

22        Okay.  So, Ms. Halverson, your turn.

23        MS. HALVERSON:  We're back up online and everything

24  is kosher?

25        THE COURT:  Yes.

1          MS. HALVERSON:  So, I want to start this sentencing
2    by first acknowledging that Mr. Werth's parents, Kathy and
3    Michael, are here today in support and in love of their son.
4          I also want to acknowledge, before I get into all
5    of the legal arguments and justifications for sentencing
6    under 18 U.S.C. 3553(a), that my interactions with Mr. Werth
7    have led me to believe that he is a kind, gentle,
8    service-oriented individual who is extraordinarily
9    intelligent and has an unwavering commitment and faith in his
10   God.
11         These are attributes I want the Court to keep in
12   mind.  They are important parts of what makes up Mr. Werth.
13   He is bigger, he is more than what he's been convicted of.
14         This case and sentencing may be about what
15   Mr. Werth did, but it is not who he is.  And my hope is that
16   the Court will keep that in mind during today's hearing.
17         I also want Mr. Werth to remember that.  He is more
18   than this case.
19         So, to begin, I think it's important for us to
20   review Mr. Werth's history and characteristics.  Mr. Werth is
21   now 40 years old.  He grew up in a loving home with his
22   parents and younger sister.  He lived in a blue collar town
23   with parents who had blue collar income.  The family was
24   bonded by their faith, and it became a precious and enduring
25   trait of the Werths.

1            As a result of their faith, Mr. Werth always

2    aspired to be of service to others, and he was either by

3    starting or volunteering in community-based organizations of

4    service for those with disabilities.

5            He went to school.  He did well.  And he continued

6    to engage his mind.  He worked great jobs and put his focus

7    on teaching and assisting others.  And when he graduated with

8    his master's degree, he secured a position at a local church,

9    and he did this all while doing his best to bring kindness

10   and joy into the world and to his parents.

11           It goes that Mr. Werth's life began to derail

12   around 2016 when his Montgomery County conviction happened.

13   He went to prison.  He lost his job.  He became a sex

14   offender, a community leper.  But even with the odds stacked

15   against him, Mr. Werth made friends.  He built a community

16   around him.  And he continued to foster and build on his

17   familial relationships.  And he never wavered in his faith.

18   He also continued to be an excellent worker and the

19   right-hand man of his boss at a catering company.

20           However, when Mr. Werth was released from

21   Montgomery County, no sex offender treatment was made

22   available to him.  Additionally, COVID-19 was not far off on

23   the horizon.  And with the pandemic came even less in-person

24   interaction with his probation agent and services.

25           I'll point out that the incidents described in his

1  trial all took place during the height of the pandemic,

2  which, as the Court knows, is when many Americans were

3  experiencing extreme and severe mental health issues stemming

4  from isolation and loss of community.

5          I think it's important to note, just as I did in

6  our sentencing submission, that Mr. Werth's offense conduct

7  in this case did not involve hands-on abuse.

8          I do realize that this conduct that he was

9  convicted of is serious.  But the Court, though it may be

10 awkward at times, must do the hard work of distinguishing and

11 weighing certain crimes against others.  We know that assault

12 is not as bad as murder.  We know that selling fentanyl is

13 far worse than selling marijuana, we know that hands-on abuse

14 is worse than production.

15         And here there was no hands-on abuse.

16         THE COURT:  Well, this was production.  He was

17 convicted of production; correct?

18         MS. HALVERSON:  Correct.  There was no hands-on

19 abuse, though, is my point.  So, I'm not saying that wasn't

20 production.  I am admitting there was production.  But this

21 was not a situation in which Mr. Werth was a hands-on abuser

22 of these girls.

23         THE COURT:  But it's far more serious than other

24 child pornography cases where it's viewing distribution of

25 images created by others, no direct contact with any victims;

1  correct?

2          MS. HALVERSON:  Correct.  But I think that this

3  sentence that the Government is asking for, Your Honor, is in

4  line with hands-on abuse and I think is inappropriate in this

5  particular case.

6          I don't think that the sentence should reflect the

7  same kind of sentence that a hands-on abuser should receive.

8          In my sentencing memo, in my response, I listed

9  many cases with much more egregious conduct.  And those cases

10 garnered sentences of less than what the Government is asking

11 for here.

12         In addition to those cases, I'll also point out

13 that the U.S. Sentencing Commission's Jason database found

14 that the average sentence for defendants charged with

15 Mr. Werth's crime with the exact final offense level and his

16 exact criminal history score was sentenced to an average of

17 30 years of incarceration.

18         So, the Government's request of more than twice

19 that appears to be untethered from like cases.  In fact, from

20 my reading of the Government's submission, it failed to put

21 forward a single case of comparison where a defendant on

22 these like facts with a similar criminal history was

23 sentenced to anything like 70 years for a non-contact

24 offense.

25         Your Honor, I think it's important to acknowledge a

1    stark fact that I mentioned in my sentencing memo.  Whatever

2    this Court does today, Kathy and Michael will not ever see

3    their son outside of a prison.  Kathy and Michael, depending

4    on where he is ultimately incarcerated, may never get to hug

5    him again.  It's important for the Government and for the

6    Court to acknowledge and be sensitive to that.

7              Kathy and Michael did nothing wrong, but in the

8    words of Shakespeare all are punished.

9              I know that Mr. Werth, his parents, have hope that

10   this Court will at least allow Mr. Werth the ability to hug

11   and create new memories with his sister and her family.

12             And there is evidence to suggest that if Mr. Werth

13   is released after he turns 60, his chance at recidivating is

14   much lower than a younger man's.

15             35 years of incarceration is a long time.  I

16   implore the Court to not let the reality of what 35 years is

17   to be dwarfed by the Government's recommendation.  35 years

18   is the birth of a child through her college graduation and

19   her first job.  35 years is the difference between when RFK,

20   Jr. was shot and when President Obama was elected.  35 years

21   is not --

22             THE COURT:  And you're referring to Senator

23   Kennedy, not Junior?

24             MS. HALVERSON:  I'm sorry, yes.

25             THE COURT:  Thank you.

1          MS. HALVERSON:  And, Your Honor, I'll point out

2    that it hasn't even been 25 years since 9/11 happened.

3          I encourage the Court to sentence Mr. Werth

4    appropriately and to not feel beholden to compromise with an

5    unreasonable request from the Government.

6          The Government in its allocution kept saying over

7    and over again that Mr. Werth needs to be incarcerated for a

8    significant period of time.  35 years is a significant period

9    of time.  He will be 75 years old when he is released from

10   the Bureau of Prisons.

11         THE COURT:  Is that -- you're not counting any type

12   of good time conduct in that calculation, I assume?

13         MS. HALVERSON:  Correct.

14         THE COURT:  Okay.

15         MS. HALVERSON:  And one of the reasons that I think

16   it's -- it could even be, Your Honor, that his violation of

17   probation, which is also still pending in Montgomery County,

18   could make that that his sentence is even more before he's

19   released.

20         So, again, I encourage the Court to think about

21   what 35 years means in reality.

22         I understand that that is a standard condition for

23   the probation office to encourage drug testing.  I don't

24   think there is a basis to impose it here.  It was -- it

25   appears that any marijuana use or mushroom use ended over 20

1    years ago when Mr. Werth graduated high school.

2              If the probation office suspects that he is using

3    controlled substances, it can always add that condition.

4              And, again, I will point out that with the Court's

5    ruling of a 35-year -- or a 25-year mandatory minimum with

6    the 10 consecutive, we're talking about a man who's going to

7    be released from prison at 75 years old.  And whether or not

8    it's appropriate to put a drug testing condition on a

9    75-year-old man I would argue is inappropriate in this case.

10             Your Honor, --

11             THE COURT:  I'm still not sure where you're getting

12   the 75-year-old number from.  I mean, when was he detained?

13   He was detained in 2022.  So, he was 38 at the time.  A lot

14   of that will probably count, I don't know.  It's not my place

15   to decide that.  But some of that two plus years will

16   probably count.  Unless you're telling me you don't expect

17   your client to comply with the rules of the prison, he'll

18   certainly get -- it'll basically be 85 percent.  So, I'm not

19   sure where the 75 is coming from.  Even if he got no good

20   time, he'd be under 75 with the credit that we already have

21   probably in the bank.  Correct?

22             MS. HALVERSON:  Let's say, Your Honor, that he gets

23   released at 70, my argument stands.

24             THE COURT:  What about Paragraph 86 of the

25   presentence report that says that he knows he is prone to

1    addiction.  So, someone susceptible to addiction, you're

2    saying drug testing should be waived?

3         Again, this is something that every defendant gets

4    except when it's very clear that he doesn't need it.  Why

5    does this person not need it when he's someone who's prone to

6    addiction?

7         MS. HALVERSON:  I don't believe that the addiction

8    that he's talking about is necessarily drug and

9    alcohol-based.

10        THE COURT:  Well, no one objected to that

11   paragraph.  But, okay.  I understand.

12        So he does have a history of drug use, not just

13   marijuana, other drugs, as well.  Admittedly, it was a long

14   time ago.  And we also know that he's prone to addiction.

15        Okay.  I think I understand the argument on that.

16   What about the polygraph?

17        MS. HALVERSON:  So the polygraph condition, I mean,

18   I agree with Your Honor's assessment, the quick reading of

19   the case that you did in United States v Gaskin, that that

20   was -- the facts of that case were that Mr. Gaskin did not

21   have that condition originally imposed upon him in his

22   supervision.  And that this was a request by Probation to

23   have it added after he had completed treatment and there was

24   no actual recommendation from his treatment provider that

25   going forward he needed polygraph testing.

1          So my position in regards to Mr. Werth is not that

2     he can't have polygraph testing as part of his conditions of

3     release, as part of his treatment.  My objection is that the

4     probation officer should not be the one making that call and

5     that a blanket condition without the input and request from

6     the treatment provider is inappropriate under 18 U.S.C.

7     3553(a).

8          THE COURT:  Let's see.  Paragraph 12.

9          (Pause.)

10         So you're not -- let's say there was a conclusion

11    that this is a sound concept.  But if you're objecting to how

12    it's implemented, one would be open to modification of a

13    language.  What modification would you propose?

14         MS. HALVERSON:  I am glad that you asked that, Your

15    Honor.  I think that there is language that we would agree

16    would comply with the law, and that language I could pass it

17    up to the Court or I can orally say it.

18         THE COURT:  Why don't you read it first and see how

19    different it is.

20         MS. HALVERSON:  As part of sex offender treatment,

21    you must submit to periodic polygraph examinations.  The

22    United States Probation Office, in conjunction with the

23    treatment provider, will determine the frequency of the

24    polygraph examinations to determine if additional or

25    different treatment is warranted.

1          (Pause.)

2          THE COURT:  So just based on my review of

3  Judge Boardman's decision, she did not say that polygraph

4  testing is never permitted in a child pornography case;

5  correct?

6          MS. HALVERSON:  Correct.

7          THE COURT:  And she also focused heavily on

8  Mr. Gaskin having a lengthy history of not violating

9  conditions of supervised release, saying that there was no

10  real reason for that; correct?

11          MS. HALVERSON:  Correct.

12          THE COURT:  Did she make a determination that there

13  is controlling authority that does not permit a condition

14  that refers to submitting at the discretion of the probation

15  officer without reference to consultation with the treatment

16  provider, which, frankly, probably happens, anyways.  But in

17  terms of it not being required, did she find any legal flaws

18  with the language in Paragraph 12 that are sort of

19  categorical problems, leaving aside whether Mr. Gaskin was a

20  good candidate or not?

21          MS. HALVERSON:  Your Honor, I don't believe that

22  exact question was raised in front of Judge Boardman, so I

23  don't think she made a specific ruling on it.  But I will say

24  that the cases that she used to justify her opinion, one of

25  them being United States v Castellano, which is 60 F.4th 217,

1    that particular case, which is another Fourth Circuit case

2    from 2023, did make the finding that a -- I'm sorry.  That

3    was not Castellano.  My apologies.  I misspoke.  That was

4    United States versus Wroblewski, which is 781 F.Appx. 158,

5    and that was 2019 and is a Fourth Circuit case.  And in that

6    case, the Court did find that it may not categorically impose

7    a particular condition for every child pornography case that

8    comes before it.

9            THE COURT:  Well, no one's asking this to be

10   categorical.  Here we have someone who committed a sex

11   offense before this offense, was on supervised release or

12   probation for that and yet committed this offense, did it

13   three different times.  It wasn't just possession of child

14   pornography and viewing of it, as in the case of Mr. Gaskin.

15   It was someone who actually had direct contact with three

16   victims, not just an interaction admittedly over technology.

17   Someone who's never accepted responsibility for anything.

18           Isn't that quite different than imposing a

19   categorical requirement that every sex offender gets this

20   condition?

21           MS. HALVERSON:  Your Honor, when we objected to

22   that language, the probation officer flatly wrote that the

23   reason that the language was being put in there was because

24   it was a standard language that was adopted for sex

25   offenders.  So, I don't -- so if Your Honor --

1          THE COURT:  I think she's saying the language is
2  what you use when you make a determination that this
3  particular defendant needs a condition.
4          And all these conditions, of course, are subject to
5  modification, but you certainly can't expect the probation
6  office to unilaterally modify the language.  That's usually
7  something that would happen here.
8          So, maybe you misunderstood.  I'm not saying I know
9  what they said exactly, but that's how I would read it, is
10 they're saying, look, it's not my job to change the language.
11 But this is what we use when it's being considered.  And here
12 we are considering it.
13         But I don't think that implies that anyone
14 believes, or that I would conclude, that this is something
15 that automatically applies no matter what.  It's subject to
16 discussion.  It's based on the individual person.
17         What I was saying is:  Isn't Mr. Werth's situation
18 different than Mr. Gaskin's?  You're the one who said, well,
19 there's different types of offenses.  Someone who has a
20 history of direct contact with a victim in the state system,
21 committing the crime, then reoffending in a virtual way on
22 three different occasions where there's direct electronic
23 contact as opposed to simply possession and viewing, which it
24 seems to be what Mr. Gaskin did, those are quite different;
25 aren't they?

1          MS. HALVERSON:  They are, Your Honor.  But I will

2    also point out that the language that we suggested would also

3    be language that would allow Mr. Werth to be polygraphed.

4          Again, we're not saying he can't be polygraphed.

5    We're saying that it has and it should be used at the

6    discretion of his treatment provider and not directed just by

7    his probation officer.

8          THE COURT:  Okay.  Now just remind me again.  I'm

9    looking at the sentencing memorandum.  Where did you discuss

10   this condition in the sentencing memorandum?

11         MS. HALVERSON:  Court's indulgence.

12         I may not have, Your Honor.

13         THE COURT:  I mean, I think that's kind of the

14   problem.  Leaving aside -- I'm not going to cast blame on

15   either side or anybody about how the report doesn't actually

16   identify this as an issue that's being, that's in dispute;

17   but, you know, you're referencing legal arguments without any

18   legal submission, so it's not easy.  I understand that we are

19   where we are.

20         Okay.  So, if a condition like this were included,

21   and it said, "As part of sex offender treatment you must

22   submit to periodic polygraph testing at the discretion of the

23   probation officer in consultation with the treatment provider

24   as a means to ensure that you are in compliance with the

25   requirements of your supervision or treatment program," that

1  is not exactly what you just said?  What are the problems

2  with that?  Even though --

3                MS. HALVERSON:  I'm sorry.  I don't understand.

4                THE COURT:  I'm just not going to adopt your

5  language.  I'm going to take the language that we have and

6  I'm going to modify it, maybe.

7                MS. HALVERSON:  Okay.  All right.

8                THE COURT:  And I just told you what I would say.

9  And I want you to tell me what's the legal problem with that.

10  Where has the Fourth Circuit or the Supreme Court said we

11  can't do that?

12                MS. HALVERSON:  I think that the issue that we

13  would have is I think that the polygraph tool would be used

14  with whether or not it would be in compliance with conditions

15  of his supervision and not just it would be applied to

16  determine if he needed additional treatment.

17                So, I think that sort of the overall sort of

18  tension here, Your Honor, is that whether or not somebody's

19  being polygraphed to determine if they are in compliance with

20  supervision conditions is fundamentally different if they're

21  being polygraphed --

22                THE COURT:  Are you saying that's never

23  appropriate?  Even if it's someone who is a recidivist who

24  has directly endangered children, that one could never say

25  well, look, it's hard to detect, especially things -- why

1    couldn't a probation officer say we're concerned this person

2    may still be contacting girls, interacting with them

3    directly, being able to ask them these questions, whether or

4    not the treatment program's going on, what is legally

5    incorrect about that other than just saying there's an

6    individualized determination that there's a need for that?

7            MS. HALVERSON:  Your Honor, from our perspective,

8    it is the language that Probation has used in their

9    modification that is the problem.  So, I don't think that we

10   are saying -- and I don't have a problem necessarily with the

11   Court's modified language of that as long as the polygraph

12   testing is tied to treatment and not a violation of

13   supervised release hearing or petition.

14           THE COURT:  Well, I guess -- I agree with you that

15   if it's treatment, that makes sense.  What I'm not sure about

16   is:  Is there some legal basis to say that one cannot impose

17   it in a situation where there's a concern about violations of

18   conditions?  So someone's concerned.  You know, we heard a

19   secondhand, through secondhand information, we believe he may

20   have contacted a child and proposed some sort of sexual

21   relationship.  And having heard that, and that obviously

22   being a violation of the conditions, could the probation

23   officer use this tool?

24           MS. HALVERSON:  I don't think it could never be

25   imposed, Your Honor, but I don't think there's been a

1    sufficient showing that for Mr. Werth it needs to be imposed.

2              THE COURT:  What else do you need besides someone

3    who actually has had direct contact with a minor in the past

4    and has had a criminal justice sentence and still

5    nevertheless committed these crimes on three different

6    occasions, what else do you need?

7              MS. HALVERSON:  Your Honor, I think given the fact

8    that, even taking your representations about the good time

9    credit and how much time it's going to be, that we're talking

10   about a 70-year-old man when he gets released from prison.

11   And that the studies have shown --

12             THE COURT:  I don't think anybody knows that.  I

13   mean, there are all sorts of reasons.  The President just

14   pardoned several of our offenders.  I mean, lots of things

15   can happen.

16             But I understand your point.  It's a little

17   different when you get to that age.  I don't disagree with

18   that.

19             MS. HALVERSON:  So, you know, if the Court imposes

20   that condition with the modified language that it has, I

21   don't know that there is Fourth Circuit law against it.  But

22   from our perspective, Probation's original language was

23   inappropriate.

24             THE COURT:  Okay.  So, let me just say one thing on

25   this, which is unrelated to this case.  But I have three

1   members of the Federal Defender's office here.  And I've had

2   this issue just a week or so ago where members of your office

3   did sort of the same thing.  In fact, I mean, I think whether

4   it was -- it might even have been a mandatory condition.

5   There was sort of a facial challenge to language that the

6   courts -- that this District has used repeatedly, either a

7   standard condition, I think that's what the objection was

8   last time, saying that that shouldn't be a standard condition

9   even though it's something that through our probation

10  committee generally, including the Federal Defender's Office,

11  there's been input from all stakeholders.  Whether they like

12  the end result or not, different question.

13          This is a little different.  The special

14  conditions, I don't know to what extent that language goes

15  through the committee, but I believe it does.

16          And, again, it's certainly subject to modification.

17  I am totally open to the idea that you would propose a

18  modification in this -- under these facts.

19          But to come in and say, look, that language is

20  totally inappropriate, I think the proper venue for that is

21  to have your office, through Mr. Wyda, go to the probation

22  committee and ask for changes to these.  I think to do them

23  on an individual basis is really a disservice to the

24  defendants.  Because if your office really has a problem with

25  any of the standard conditions or with the language we use

1    for these special conditions, get those changed on the front

2    end.  Don't come into individual cases and saying Probation

3    is out of line for proposing something that everyone,

4    including your office, has had input on.  It's just not fair.

5         MS. HALVERSON:  Well, I will certainly pass that

6    message on to Mr. Wyda.

7         THE COURT:  I think he should pass it on to

8    everyone that they should -- if you really have a concern, if

9    your office has concerns, bring them en masse to the

10   committee or otherwise.  Don't try to get the change

11   happening in individual cases.  It's just very difficult.  I

12   think it's a disservice to your clients, you know, if you

13   wait till now.

14        Now, you may not have noticed this before, but now

15   that this is an issue, I would suggest you take it through

16   that channel rather than just keep going judge to judge to

17   try to get someone to change it because, even then, it

18   changes it for one case; it doesn't change it for the whole

19   district.  And you're better off trying to do that, now that

20   you know this is an issue.  Then do that before the next case

21   arises where you're going to make the same argument and say,

22   you know, to basically tell the judge every other part of the

23   process that came up with this language is wrong.  That's my

24   suggestion.  But, anyways.

25        So, anyways, do you see any legal flaw in the

1  issues I raise as being proper considerations on whether

2  someone should get a polygraph examination, or at least have

3  it as a condition when someone has actually had direct

4  contact, has been a repeat offender, even when on supervised

5  release, has a history of violent conditions in this exact

6  same way, and has had direct contact, even if not in person.

7  It's not simply someone who's looking at child pornography.

8         And so is there any legal problem with that

9  assessment of this individual defendant, not as a categorical

10 matter, but this particular individual defendant, on whether

11 such condition is appropriate?

12         MS. HALVERSON:  No.

13         THE COURT:  Or can be imposed at the discretion of

14 the judge.

15         MS. HALVERSON:  I'm so sorry I keep interrupting

16 you.  But I do believe that that is sound legal reasoning,

17 and I do not have an objection to that.

18         THE COURT:  Okay.

19         On the special assessments, I'll go back to

20 Probation on this.

21         Obviously, the key issue on special assessments

22 is -- to a large degree it's whether someone's indigent.

23 That's a huge part of it, if not the main part of it.

24         And before you make an argument on that, let me

25 just hear from Ms. Cameron on the question of where does this

1    defendant fall on that?

2           I think on the one hand the report shows a

3    significantly negative net worth; but at the same time,

4    there's some sort of real property at issue?

5           Can you just clarify your position on whether this

6    defendant is indigent or not?

7           PROBATION OFFICER:  Give me one moment, Your Honor,

8    I apologize.

9           (Pause.)

10          I believe our position was that he didn't have the

11   ability to pay a fine.  And also we have to look at the fact

12   that he will be, no matter what, serving a significant amount

13   of time in custody.  So it's very difficult to know where

14   he's going to come out.

15          But I would say based on that, in combination with

16   his current financials, we would ultimately defer to the

17   Court, but we would argue that he could be considered

18   indigent because of -- or for those special assessments.

19          THE COURT:  Well, in theory the special assessments

20   are paid now.  Obviously, sometimes people can't do that.

21          So -- but at the same time, it looks like he's got

22   a negative net worth.  But there's talk about this in

23   Paragraph 102 about being the owner of a townhouse.

24          MR. SZEKELY:  Your Honor, I could shed some light

25   on that.

1          THE COURT:  Okay.  Go ahead.

2          MR. SZEKELY:  Mr. Werth indicated to me -- excuse

3    me.  He purchased that house not terribly long before his

4    state court conviction.  And at the time he was convicted in

5    the state court and the sentence of incarceration lost his

6    employment, he sold the house.  It's effectively, he owned it

7    for so little, it was effectively, you know, a net zero

8    transaction.  But he no longer owns that residence, which is

9    why he didn't declare it in his assets which was declared

10   under Paragraph 101.

11         THE COURT:  So he sold the house for $234,900.  It

12   doesn't say what the purchase price was.

13         MR. SZEKELY:  Mr. Werth indicates it was around

14   that.  He doesn't remember the exact amount.  He just owned

15   it for a few years and it was in the period of the mortgage

16   where you're paying effectively all interest and very little

17   principal.

18         THE COURT:  So do we know -- I mean --

19         MR. SZEKELY:  To the extent there are assets left

20   from that sale, Your Honor, they are in the checking accounts

21   which is listed in Paragraph 101.

22         THE COURT:  How does that sound, Ms. Cameron?  Is

23   that accurate?  Or does that conflict with anything you've --

24   your office has identified?

25         PROBATION OFFICER:  It does not conflict with

1    anything and is accurate.  And public records can be dated

2    and not up-to-date, so I would certainly defer to defense

3    counsel on that.

4              THE COURT:  Okay.  I think I understand.

5              MR. SZEKELY:  Thank you, your Honor.

6              THE COURT:  You're here just on the special

7    assessment issue?

8              MR. SZEKELY:  I'm here on the financial.  I was

9    anticipating restitution, as well.  But there was no request,

10   so I'm only here on the financial aspects of the case.  I'll

11   just tick through the statutes briefly, Your Honor.  Section

12   18 U.S.C. Section 314 expressly incorporates indigency into

13   the statutory language.  And I think both on the basis of the

14   discussion we've had here, Mr. Werth's appointment of counsel

15   and Probation's finding in Paragraph 104, I think he does say

16   the indigency requirement, so I'd ask the Court to continue

17   to find that Mr. Werth is indigent based on his --

18             THE COURT:  I agree with you.  I was confused by

19   Paragraph 102, to be honest.

20             MR. SZEKELY:  Okay.

21             THE COURT:  So, I think now that that's been

22   addressed, again with a negative net worth and no apparent

23   additional major assets -- and, frankly, implicitly by saying

24   that he's not able to pay a fine, that certainly tells us a

25   lot on that issue.

1          So, I will find that the defendant is indigent.

2    And so these additional special assessments beyond the

3    standard $400 are -- can be waived and will be waived.

4          MR. SZEKELY:  Thank you.

5          And, Your Honor, would you like me to be heard on

6    the fine the Government requested?

7          THE COURT:  Sure.  Why not.

8          MR. SZEKELY:  I think for the same reasons,

9    indigencies and Probation's finding, as the Court knows, the

10   fines are due and payable at the time of sentencing and Mr.

11   Werth would be unable to pay a fine at this time, and his

12   future is largely to Social Security benefits.  He'll have a

13   few working years left, even if the Court's good time

14   calculations were to be accurate.

15         THE COURT:  Okay.  Thank you.

16         Ms. Halverson, was there anything else from your

17   side?

18         MS. HALVERSON:  Your Honor, I do believe Mr. Werth

19   has a statement that he would like to read to the Court.

20         THE COURT:  Before we get to him, was there

21   anything Counsel had to add?

22         Let me just -- actually, last question for you,

23   Ms. Halverson, is:  The Government, I think, is asking for a

24   lifetime supervised release.  I think you had suggested, was

25   it 25 years?

49

1          MS. HALVERSON:  Correct.

2          THE COURT:  And is that just based on the age at

3   which he would be upon release?

4          MS. HALVERSON:  Correct.

5          THE COURT:  Okay.  I think I understand that.

6          Mr. Werth, you have the opportunity, if you'd like

7   to, to make a statement before the sentence is issued.

8          DEFENDANT:  Dear Honorable Judge Chuang, I've now

9   had over three years to reflect on the gravity of my

10  situation.  I'd like to take a few moments to share with you

11  my current state of mind and my overall attitude.

12          I've been blessed to be given a spot in the Jail

13  Addiction Services Program at MCCF for a total now of 10

14  months.  That was six in 2021 and four currently.  The time

15  in this residential therapeutic community in jail has opened

16  my eyes to truly unmanageable my life had become from 2015 to

17  2021.  I've been able to unpack some serious traumas I

18  experienced in prison during my last incarceration.  I

19  witnessed firsthand extreme levels of violence, including a

20  near-death beating and the severe burning of a man

21  immediately beside me.  My initial untreated issues were

22  compounded upon my release from prison.  And to this day, I

23  sleep lightly and poorly, ready to jump at the slightest

24  noise, prepared to defend myself.  Often when I close my

25  eyes, I see that vicious beating in slow motion.

1    Through participation in JAS and regularly speaking
2  with a therapist, I can now see the underlying triggers in my
3  life.  I understand now that I have an addiction and that it
4  is a disease.  I rationalized all of my negative behaviors.
5  I had an excuse for everything.  I willingly put myself in
6  very dangerous situations because I acted recklessly and
7  impulsively.  Now I'm working on living my action plan.  And
8  I desperately hope to make amends.

9    During this incarceration, I've reconnected with
10  God.  I've learned -- relearned the importance of reliance on
11  a higher power for help and recovery.  I've attended Bible
12  study and church services multiple times a week.  I've helped
13  several detainees in their studies for their GED and tutored
14  one gentleman in ESL.  I recognize I've wasted so much I've
15  been blessed with, and I try to make amends through my
16  assistance and kindness to others.

17    I've taken on the role of physical trainer this
18  past year by teaching 10 men all the cardio workouts I've
19  been doing these past three years.  Once I was given an
20  institutional tablet, I took course after course to improve
21  my behavior and skills.  I now seek purity in body, mind and
22  spirit in recovery.

23    I truly hope I'll be afforded the opportunity one
24  day to help other men upon their reentry into society.  I
25  strongly desire to share my difficulties in this adjustment

1    and want to assist them in processing their traumas from

2    incarcerated life through outdoor excursions and hikes.

3            I wish I had a way to unpack my experiences before

4    I was thrown back into the world of people who had no idea

5    what I had gone through.  I hope to provide this assistance

6    in any way I can during my upcoming incarceration and upon my

7    release.

8            I am absolutely devastated to be in this situation.

9    I know you have the final say at sentencing here.  I humbly

10   implore you to provide any amount of leniency and mercy

11   available to me for the sake of my family and loved ones.  I

12   have put them through so much already.  I am committed to do

13   whatever it takes, truly whatever you deem fit, so that I

14   might be able to return to them as soon as possible.

15           Thank you for your time and consideration.

16   Sincerely, Brian Werth.

17           THE COURT:  Thank you.

18           (Pause.)

19           Okay.  In considering the advisory guidelines, the

20   appropriate sentence for Mr. Werth, I've considered the

21   advisory range, which is life imprisonment.  I also

22   considered all the factors in 18 U.S.C. Section 3553(a), as

23   well as Congress' direction the sentence imposed be

24   sufficient but not greater than necessary to meet the

25   purposes of sentencing.

1        On the nature of the offense, this is a very
2   serious case involving production of child pornography that
3   amounted to the abuse of children.  The defendant engaged in
4   a series of three episodes in which he interacted with and
5   enticed minor girls online and convinced them to send
6   pornographic images and videos of themselves to him over the
7   Internet.  The victims were 15, 15, and 11 at the time.  And
8   some of the videos involve -- included the girls engaging in
9   sex acts for the defendant's sexual gratification, very
10  disturbing images that were played at trial showing not just
11  videos or people who were unclothed but actually getting them
12  to engage in very graphic sex acts for the defendant's
13  gratification.

14       Defendant also sent videos of himself engaged in
15  sexual acts and engaged in sexually explicit communications
16  with the victims.

17       The relationships and the creation and sending of
18  pornographic videos was extensive and very disturbing.  Based
19  on the nature and duration of these offenses, this was an
20  extremely serious form of the crime of child pornography,
21  second only to offenses in which the defendant actually
22  engaged in physical activity with the victims.

23       So by the standards of this type of offense, it was
24  very serious and certainly more serious than other electronic
25  forms that didn't involve the level of direct communication

1   and exchanging of specific videos.

2          On the history and characteristics of the

3   defendant, Mr. Werth had a solid upbringing, college degree,

4   and steady employment history.  He has engaged in charitable

5   good works, including in relation to children with

6   disabilities.  However, he does have a prior conviction for a

7   sexual offense in the fourth degree, which consisted of

8   physically assaulting a 16-year-old girl, including with

9   digital penetration.  Particularly disturbing is the fact

10  that he met the girl and gained influence over her because

11  she was a church youth group member for a group in which she

12  was a member and showed an utter abuse of trust.  Of course,

13  he was sentenced for that offense and may even have an

14  additional based upon a violation of probation.  But this is

15  an aggravating factor for certain reasons.

16         First, he committed this offense while on court

17  supervis- -- the present offense while on court supervision

18  for that prior offense, and that factor's not captured in the

19  criminal history category anymore.

20         Second, and more importantly, he learned the

21  consequences of sexual offenses against minors and was even

22  on a sex offender registry, but that did not cause him to

23  stop committing these types of crimes.  Even with this prior

24  experience with the criminal justice system, he went ahead

25  and engaged in more sexual crimes against minors,

1    specifically the three victims in this case.

2            Now, based on these two main factors, the nature

3    and circumstances of the offense and the history and

4    characteristics of the defendant, a serious sentence is

5    absolutely necessary to reflect the seriousness of the

6    offense, to promote respect for the law, provide just

7    punishment, to provide adequate deterrence to Mr. Werth and

8    others, and to protect the public from further crimes.

9            The defense points primarily to the issue of

10   avoiding unwarranted disparities among similar defendants and

11   argues that Mr. Werth should not receive a sentence

12   comparable to those given to defendants engaged in physical

13   sexual contact with minors rather than just online content.

14           The defense does make a reasonable point.

15   Primarily for this reason, the Court finds that the guideline

16   sentence of life and the Government's recommendation of a

17   total of 70 years is too high and it would create such

18   unwarranted disparities.

19           So the Court will not grant the Government's

20   request -- even though the Court will not grant the

21   Government's request, specifically, it will vary downward

22   from the guideline range of life imprisonment because the

23   nature of this offense, while extremely serious, is not at

24   the top level of these types of crimes, and a variance

25   downward is needed to avoid unwarranted disparities.

1    However, the Court still concludes that this was a

2 very serious offense for which a very serious sentence is

3 warranted.  And it should be in the range, the top end of

4 those involving online contact, and, frankly, in the range of

5 some that might involve physical contact for several reasons.

6    First, the case involved multiple victims and

7 repeated interactions and videos.

8    Second, involved one victim as young as 11 years

9 old.

10    Third, it was not a first offense.  The prior

11 conviction did nothing to deter Mr. Werth.

12    And, fourth, Mr. Werth has shown absolutely no

13 acceptance of responsibility or remorse, which is often

14 present in many of these child pornography cases.

15    The defense even went so far as to object to the

16 presentence report's failure to state that Mr. Werth still

17 maintains his innocence, even though there was certainly no

18 need for that kind of a submission.  He doesn't need to admit

19 his guilt in a presentence report or understanding that

20 appeals may follow today.

21    But there was overwhelming evidence of guilt at

22 trial and in the jury verdict.  And even in the statement we

23 just heard, Mr. Werth spent a lot of time talking about

24 himself and how this is a problem for him.  Even without

25 admitting guilt, he certainly could have expressed some

1  sympathy or some consciousness of what the victims, including
2  the one who testified at trial, have gone through.

3         I greatly regret that the victim who had planned to
4  testify or be present here is unable to come today.  But
5  knowing -- having seen that victim testify, it is absolutely
6  clear to me that this case was not about Mr. Werth.  This
7  case was about the victims.  And the fact that he even today
8  has an utter lack of any conception that there were people
9  who were harmed in this case, regardless of who is
10 responsible, and not even expressing any -- not even
11 acknowledging them, frankly -- is really galling.

12        And so this is the kind of case in which even
13 though a life sentence may not be warranted or a 70-year
14 sentence may not be warranted that a very serious offense --
15 sentence is necessary given that he simply just doesn't get
16 it.

17        Finally, the Court notes that in the present era,
18 online crimes are approaching the level of seriousness of
19 in-person interactions.  With modern technology, the level of
20 interaction where there's full audio and video communication
21 and when the victim physically does to her own body what the
22 defendant wants leaves little in terms of a distinction in
23 terms of what used to be a more legitimate distinction
24 between virtual and in-person contact.

25        The second -- the case with which -- the ease with

1    which the defendant can find victims online and the number he

2    can reach is alarming.  In-person contacts are harder to

3    arrange.  But these types of contacts are alarmingly easy to

4    arrange.  And the risk to ordinary children out there is far

5    greater and more likely to occur, greatly more likely to

6    occur than in-person contact.  And the harm to the child can

7    be comparable even with these online contacts.

8              It's also much harder to track and find the

9    defendants who engage in this type of crime.  They could

10   actually be anywhere in the country or anywhere in the world.

11   So they need to be treated with great seriousness and

12   deterrence is particularly important as a consideration for

13   these types of online crimes where there's direct contact but

14   the defendant is not easily found or traceable.

15             So for all these reasons, the Court finds that a

16   total sentence of 37 years is sufficient, but not greater

17   than necessary, to meet the purposes of sentencing.

18             The Court also notes, implicit in that finding, is

19   that the determination of whether the 25-year mandatory

20   minimum sentence applied or not has no impact on my overall

21   sentencing decision.  Even if there were no mandatory minimum

22   25-year sentence for certain of these counts, the Court would

23   still find that the same sentence of 37 years in total,

24   however broken down, is the correct sentence that's

25   sufficient, but not greater than necessary, to meet the

1    purposes of sentencing under 18 U.S.C. 3553(a).  And so it

2    does not -- that mandatory minimum sentencing determination,

3    even though it's one that the Court has to make, does not

4    impact what the ultimate sentence is.

5            As for supervised release, the Court will agree

6    with the defense recommendation of 25 years in light of the

7    defendant's age at any such -- sentence of that amount is

8    likely sufficient to provide the defendant with the needed

9    services for as long as necessary and also to allow for

10   monitoring in order to protect the public.

11           As I stated, I do find that Mr. Werth is indigent,

12   so the enhanced special assessments are waived.  The

13   mandatory special assessment is $400.  Ordinarily -- as I

14   said, ordinarily there would be an order of restitution if

15   any victims had submitted orders of proposed -- of

16   restitution amounts, but they did not do that in this case.

17           And as for the conditions, I will impose the

18   standard condition or, sorry, the mandatory condition of drug

19   treatment.  I do find that the presentence report, which

20   references prior drug use, also a history or at least a

21   tendency towards addiction, and the fact that those kinds of

22   substances can have an impact on whether a defendant might

23   engage in this kind of crime again justifies, again, just the

24   idea that testing is not going to be waived.  Certainly, in

25   many cases testing doesn't actually happen or it stops at

1    some point, but to go outside of the norm and to say this is

2    someone who has absolutely no risk of an issue with addiction

3    I don't think is accurate under the presentence report, so

4    I'm not going to make that change.

5           And as for the polygraph issue, I will impose the

6    condition.  I will make some modifications to the language,

7    as I have discussed.  I do find that in this very specific

8    instance, again, I've already stated it where the defendant

9    has a history of committing this offense while on supervised

10   release or probation, he's shown a history of not following

11   conditions of supervised release -- and not just not

12   following them, but engaging in these specific types of

13   crimes on multiple occasions where he's shown no acceptance

14   of responsibility at all and where the types of crimes here

15   are particularly serious.  They involve direct contact with

16   children, causing them to engage in very difficult and

17   graphically -- graphic sexual activity.  It's very different

18   than just someone who is trading in pornographic images that

19   they had nothing to do with the creation of.

20          And so in this particular case, I do find that

21   Probation having the tool both to, in consultation with the

22   treatment provider, have polygraphing occur as needed as part

23   of the treatment program but also to address any violations

24   of conditions I think is appropriate in this case, so I'll

25   make a modification to the language, but I will include that

1  condition.

2          So with that I'm going to impose -- well, actually

3  let me ask one other question, Ms. Cameron.  The special

4  conditions don't reference anything about sex offender

5  registration notification.  I know it may be addressed in

6  some of the standard ones, but is there any particular reason

7  for that or should that be part of this?

8          PROBATION OFFICER:  I believe if it is an option as

9  one of the standard conditions, we would be recommending that

10 as one of the standard conditions.  I think that's a

11 mandatory condition.

12         THE COURT:  It's Number 6, so.

13         PROBATION OFFICER:  So, yes.

14         THE COURT:  I would make the finding that it is

15 applicable even though that is in there, so we'll do that.

16         Okay.  So, Mr. Werth, I'm now going to impose the

17 sentence, if you could please stand.

18         In the case of United States versus Werth, the

19 Court sentences the defendant as follows:  On Count One, on

20 production of child pornography, the Court sentences you to a

21 term of imprisonment of 324 months to be followed by, well,

22 25 years of supervised release.

23         On Count Two, production of child pornography, the

24 Court sentences you to a term of imprisonment of 324 months

25 to be followed by 25 years of supervised release.

1    On Count Three, coercion and enticement of a minor,

2    the Court sentences you to a term of imprisonment of 324

3    months to be followed by 25 years of supervised release.

4    And on Count Four, commission of a felony offense

5    involving a minor by a registered sex offender, the Court

6    sentences you to a term of imprisonment of 120 months to run

7    consecutive to the other terms of imprisonment.  The first

8    three terms of imprisonment will run concurrently.  Count

9    Four will also carry a 25-year term of supervised release.

10    All the terms of supervised release will run concurrently

11    with each other for a total sentence of 444 months and 25

12    years of supervised release.

13    The Court will impose no fine because the defendant

14    is deemed to be indigent.

15    The special assessment will be $400.  As I stated

16    earlier, the enhanced special assessments are waived because

17    of indigency.  No victims have sought restitution.

18    The order of forfeiture will be made part of the

19    judgment.

20    And the standard and statutory conditions of

21    supervised release will apply.

22    Is there any -- including with the finding that the

23    sex offender registration requirement is applicable here, is

24    there any reason -- I will incorporate the language on

25    Pages 27 and 28 of the presentence report for the standard

1    and mandatory and standard conditions.  Is there any reason
2    to recite all of those verbatim at this time?

3         MR. SZEKELY:  Your Honor, I reviewed them with
4    Mr. Werth in preparation of today's proceeding, and there is
5    no reason to recite them.

6         THE COURT:  Okay.  The following special conditions
7    will be included in supervised release.  First, that you not
8    use or possess alcohol; that, second, that you must allow the
9    probation officer to install computer monitoring software on
10   any computer you use; you must not make any attempt to
11   circumvent or inhibit the software after its installation;
12   you must pay the cost of computer monitoring as directed by
13   the probation officer; you must submit your computers, or
14   other electronic communications or data storage devices or
15   media, to a search; to ensure compliance with the computer
16   monitoring condition, you must allow the probation officer to
17   conduct initial and periodic unannounced searches of any
18   computers subject to monitoring.

19        Those searches shall be conducted for the purposes
20   of determining whether the computer contains any prohibited
21   data prior to installation of the monitoring software, to
22   determine whether the monitoring software is functioning
23   effectively after each installation.

24        After its installation and to determine whether
25   there have been any attempts to circumvent or inhibit the

1    monitoring software after its installation, you must warn any

2    other people who use the computers that the computers may be

3    subject to searches pursuant to this condition.

4              You must warn any other people who use these

5    computers or devices capable of accessing the Internet and

6    the devices that the devices may be subject to searches

7    pursuant to that condition.

8              A probation officer may conduct a search pursuant

9    to this condition only when reasonable suspicion exists and

10   there is a violation of a condition of supervision and that

11   the computer or device contains evidence of this violation.

12   Any search will be conducted at a reasonable time and a

13   reasonable manner.

14             You must not engage in an occupation, business,

15   profession, or volunteer activity that would require or

16   enable you to have employment with children without the prior

17   approval of the probation officer.

18             You must participate in a mental health treatment

19   program, follow the rules and regulations of that program.

20   And the probation officer, in consultation with the treatment

21   provider, will supervise your participation in that program.

22             You must not have any direct contact with any child

23   you know, or reasonably should know, to be under the age of

24   18, including your own children, without the permission of

25   your probation officer.  If you do have any direct contact

1  with any child you know or reasonably should know to be under

2  18, including your own children, without the permission of

3  the probation officer, you must report that contact to the

4  probation officer within 24 hours.  Direct contact includes

5  written communication, in-person communication, online

6  communication, or physical contact.  Direct contact does not

7  include incidental contact during ordinary daily activities

8  in public places.

9       You must not communicate or otherwise interact with

10  victims, either directly or through someone else, without

11  first obtaining the permission of the probation officer.

12       You must not view or possess any visual depiction,

13  including any photograph, film, video, picture, or computer,

14  or computer-generated image or picture, whether made or

15  produced by electronic, mechanical, or other means, of

16  sexually explicit conduct as defined under 18 U.S.C. 2256

17  that would compromise your sex offense treatment, specific

18  treatment.

19       You must not go to or remain at any place where you

20  know children under the age of 18 are likely to be, including

21  parks, schools, playgrounds, and childcare facilities.

22       As part of sex offender treatment, you must submit

23  to periodic polygraph testing at the discretion of the

24  probation officer, in consultation with the treatment

25  provider, as a means to ensure that you are in compliance

1    with the requirements of your supervision or treatment
2    program.

3          You must participate in a sex-offense specific
4    assessment.  You must participate in a sex-offense specific
5    treatment program, follow the rules and regulations of that
6    program; and the probation officer will supervise your
7    participation in that program.  And as I stated, you must
8    register under the Sex Offender Registration Notification Act
9    as referenced in the mandatory conditions.

10          I believe that completes the terms of the sentence.
11          Mr. Werth, as I said earlier, these crimes are very
12    serious; and under our guidelines, they call for a life
13    sentence.  Your engagement with these three victims online
14    was despicable and disturbing, particularly after you were
15    already convicted of a sex crime against a minor.  And given
16    the proliferation of these types of crimes, a very serious
17    sentence is necessary to protect the public from you and to
18    deter others.

19          Even so, the sentence was more lenient than it
20    could have been, which reflects the fact that you have had
21    just one prior conviction.  You thankfully did not engage in
22    physical contact with these girls and because the rest of
23    your life has generally been positive.

24          During your time in prison, I hope you will be able
25    to get the help you need to stay away from this kind of

1    activity in the future, that you can at some point come to

2    recognize the harm you did and perhaps have some remorse for

3    it, which so far you haven't displayed at all.  So, that when

4    you come back to society, you can be a law-abiding citizen

5    and not endanger others.

6              With that, you may be seated.

7              Mr. Werth, you generally have the right to appeal

8    your conviction and sentence.  If there's a basis to appeal

9    and you wish to do so, you must file the notice of appeal

10   within 14 days of the entry of judgment.  If you request, the

11   clerk will prepare and file the notice of appeal on your

12   behalf.  If you cannot afford to pay the cost of an appeal or

13   appellate counsel, you can apply to have the Court waive the

14   filing fee and appoint counsel to represent you on the

15   appeal.

16             Are there any counts or indictments that need to be

17   dismissed, Ms. Harris?

18             MS. HARRIS:  No, there is not.

19             THE COURT:  Okay.

20             Well, we are in a superseding indictment, so I

21   think the original indictment needs to be dismissed.  Any

22   problem with that?

23             MS. HARRIS:  No problem, Your Honor.  The

24   Government moves to dismiss the original indictment.

25             THE COURT:  So that motion will be granted.

1          Mr. Szekely?

2          MR. SZEKELY:  Your Honor, there are two brief

3    matters I don't think the Court didn't address during the

4    pronouncement of the sentence if I could raise.

5          The first, Mr. Werth's in primary state custody, as

6    to whether that sentence will be concurrent or consecutive

7    with his yet-to-be-imposed state sentence.  We could ask it

8    to be concurrent and the judgment noted.

9          And, lastly, I have a designation request when the

10   Court is ready for us to share those with the Court.

11         THE COURT:  Did you raise this issue of the

12   consecutive or concurrent thing -- or issue in the sentencing

13   memorandum?

14         MR. SZEKELY:  Your Honor, I think our sentencing

15   memorandum, if it didn't, it certainly should have asked for

16   it to be consecutive -- I'm sorry.  I misspoke -- concurrent

17   to his pending --

18         THE COURT:  Violation of supervised release?

19         MR. SZEKELY:  Correct.  He's backing up eight years

20   in Montgomery County.  That proceeding was postponed to allow

21   this proceeding to go forward.

22         THE COURT:  It was another issue that I don't think

23   was fully teed up.  But am I correct that -- has that even

24   been adjudicated yet?

25         MR. SZEKELY:  No, Your Honor.  The Court there was

1  waiting -- the general state policy is they won't take an
2  admission on what they call a new law violation until the new
3  case has been fully adjudicated.  So, Mr. Werth has a court
4  date I think sometime in early 2025 for that to go forward.
5  So that there's up to eight years of potential incarceration
6  that might be imposed.

7          THE COURT:  Well, I guess I'm not sure -- I know
8  we've had this situation before, but I, frankly, wasn't ready
9  for this issue.  I don't think it was raised.  Maybe I missed
10  it in the written papers.  But I've issued my sentence.  My
11  preference is not to bind the state court to do anything in
12  particular.  So, is there a requirement that I make a finding
13  on this?

14          MR. SZEKELY:  So, Your Honor, because Mr. Werth is
15  in primary state custody, if Your Honor makes no finding, the
16  Bureau of Prisons will treat that as a consecutive sentence.
17  So, it would not -- so, effectively, your silence is a
18  consecutive sentence.  So, unless the Court were to
19  affirmatively say a concurrent sentence.

20          THE COURT:  But the concurrent would basically be
21  saying I think that the violation of supervised release
22  should run concurrent to the state sentence -- to the federal
23  sentence.

24          MR. SZEKELY:  Effectively, Your Honor.  The credit
25  Mr. Werth has had pretrial would not go to this case; it

1  would all go to that case, and the remaining portion of it
2  would be concurrent.
3        So, it's not legally binding the state judge.  It
4  wouldn't affect it as -- but on the other hand, really, the
5  state judge is imposing sentence.  And it's really up to this
6  Court to determine whether or not its sentence will follow
7  the state sentence or run with it is the way I think I would
8  look at it.
9        THE COURT:  Well, so he's been in state custody for
10 two years.
11       MR. SZEKELY:  Yes, sir.
12       THE COURT:  They are on a violation of supervised
13 release.
14       MR. SZEKELY:  That's correct.
15       THE COURT:  If I say it should be concurrent, they
16 don't have to follow that, or they do?
17       MR. SZEKELY:  So, the way Maryland state sentencing
18 law works is because he's in primary state custody, his
19 sentence is already running.  And that judge doesn't have the
20 power to make her sentence consecutive to an already running
21 federal sentence.  It's the opposite of the federal rule,
22 effectively.
23       So the upshot is Mr. Werth would begin -- his
24 37-year federal sentence would run beginning today.
25       And then any state -- and then he would serve the

1    first portion of it in the state facility were it to be

2    concurrent and then he would serve the balance of it in the

3    Bureau of Prisons.

4          THE COURT:  Well, I'm not interested in a

5    concurrent sentence on a violation of supervised release.  As

6    you know, in our system, generally violations of supervised

7    release are consecutive.  I see no reason in this case under

8    these circumstances to do anything other than that.

9          It may mean that -- my guess is it probably means

10   that it's incumbent on somebody to try to get him in front of

11   the state judge to get that sorted out sooner, but I'll leave

12   that in your hands.

13         MR. SZEKELY:  Understood, Your Honor.

14         And then if I could be heard on designation

15   requests for the Bureau of Prisons.

16         THE COURT:  Yes, go ahead.

17         MR. SZEKELY:  So there's sort of three of them

18   because we don't know how the Bureau of Prisons will

19   ultimately classify Mr. Werth.

20         If Mr. Werth -- we would ask that he be designated

21   to the sex offender management unit at the U.S.P. in Tuscon

22   if he's in a high security level.

23         If Mr. Werth is designated as a medium security

24   BOP detainee, we would ask that he be designated to the sex

25   offender management unit at either FCI Elkton or FCI

1    Petersburg.

2              And if in the BOP designation process the BOP

3    determines that Mr. Werth --

4              THE COURT:  Elkton, or what was the other one?

5              MR. SZEKELY:  Elkton and Petersburg, Your Honor.

6              THE COURT:  Wait.  The Tuscon was for high?

7              MR. SZEKELY:  Tuscon is if he's in a maximum

8    security rating, Your Honor.

9              THE COURT:  Okay.

10             MR. SZEKELY:  And the sex offender management unit

11   at Elkton or Petersburg if it's a medium.

12             THE COURT:  Okay.

13             MR. SZEKELY:  And if in the event the Bureau of

14   Prisons finds that Mr. Werth is not suitable for housing in a

15   sex offender management unit, we would ask that he be

16   designated Schuylkill, that's S-C-H-U-Y-L-K-I-L-L, or another

17   facility as close to northeastern Pennsylvania as possible.

18             THE COURT:  Okay.  I can make those

19   recommendations.

20             MR. SZEKELY:  Thank you, Your Honor.

21             And we have no specific programming

22   recommendations.

23             THE COURT:  Okay.  Anything else from either side?

24   Or Probation?

25             MS. HARRIS:  Not on behalf of the Government.

1   Thank you, Your Honor.

2                MS. HALVERSON:  Not on behalf of defense.

3                THE COURT:  Okay.  Thank you very much.

4        I do want to thank the court staff, Probation,

5   frankly, the members of the public, Counsel and the marshal

6   service and the CSOs in particular for staying late given the

7   circumstances.  Given that we had a continuance, which was

8   necessitated by some of my issues, I felt the need to

9   continue -- to have the proceeding today.  But I appreciate

10  everybody staying late to do that.  Thank you.

11               THE CLERK:  All rise.  This Honorable court now

12  stands adjourned.

13          (Court adjourned at 7:10 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, Kathy Cortopassi, RDR, CRR, CRC, previously employed as a Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this the 15th day of January, 2025.


/s/ Kathy Cortopassi
Kathy Cortopassi, RDR, CRR, CRC
U.S. Official Court Reporter